STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul G. LINDNER, Defendant-Appellant.†

Court of Appeals

*No. 87–0670–CR. Submitted on briefs November 9, 1987.—*
*Decided December 30, 1987.*

(Also reported in 419 N.W.2d 352.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

784

For the defendant-appellant the cause was submitted on the briefs of *Steven D. Phillips,* first assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Christopher G. Wren,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Paul Lindner appeals from a judgment convicting him of first-degree sexual assault in viola-

tion of sec. 940.225(1)(d), Stats. He raises three issues: (1) whether use of the victim's videotape deposition at trial deprived him of his right to confront witnesses testifying against him; (2) whether testimony of the victim's teacher relating to the victim's statements to her was inadmissible as hearsay; and (3) whether evidence of prior consistent statements by the victim was admissible. We resolve the evidentiary questions against Lindner. We reverse on the confrontation issue, however, and remand to the trial court with directions to determine whether the victim was unavailable to testify within the meaning of the sixth amendment to the United States Constitution.

The material facts are not in dispute. Lindner was charged with sexually assaulting C., a mildly retarded ten-year-old child, on February 16, 1986. C. told no one about the incident until approximately three weeks later when she revealed the assault to her physical education teacher. C.'s revelation followed a school showing of a film designed to encourage children to report incidents of sexual abuse. The teacher had received special training in presenting the film, including techniques for spotting possible victims. One of the techniques taught was to observe each child's reaction to the film and the discussion following it. If a child appears "uneasy or fidgety," the teacher is encouraged to make further inquiry. C. exhibited these signs throughout the film. The next day the teacher spoke to C. and asked if she had any "touching problems." C. responded, "Yes, my Godfather [Lindner] touched me here," pointing to her genital area. The teacher forwarded the information to the school counselor, who later spoke to C.'s mother about the incident.

In early April, C.'s mother discussed sexual abuse with her, using a pamphlet on the subject distributed by a local newspaper. Noticing that C. "had gotten real white" during the discussion, her mother asked whether anything similar had happened to her. C. responded in the affirmative and described the occurrence, identifying Lindner as the perpetrator.

The prosecution sought an order allowing C.'s videotaped deposition to be used at trial in lieu of her live testimony pursuant to sec. 967.04(7), Stats. Lindner objected, arguing that the procedure violated his constitutional right to confront witnesses. The trial court granted the motion and the trial proceeded with the videotaped testimony. The jury found Lindner guilty as charged and he appeals. Other facts will be discussed below.

## I. USE OF THE VIDEOTAPE DEPOSITION

Section 967.04(7)(a), Stats., provides:

> In any criminal prosecution ... any party may move the court to order the taking of a videotaped deposition of a child who has been or is likely to be called as a witness. Upon notice and hearing, the court may issue an order for such a deposition if the trial or hearing in which the child may be called will commence:
> 1. Prior to the child's 12th birthday ....

As indicated, the trial court ordered that C.'s testimony could be taken on videotape prior to trial. The court presided at the deposition, Lindner and his counsel were present, and C. was extensively cross-examined.

Lindner does not argue that the trial court failed to comply with the statutory procedures. He does not

claim that he was denied an opportunity to freely cross-examine C. at the deposition or that there were any evidentiary errors. Nor does he argue that secs. 967.04(7), *et seq.,* are unconstitutional. He simply contends that use of the videotaped deposition in this case abridged his constitutional right to confront witnesses. Briefly stated, his argument is that use of such hearsay evidence without a showing that the witness is unavailable violates his sixth amendment confrontation rights.

■

Any inquiry into whether use of hearsay evidence is consistent with the requirements of the confrontation clause begins with the threshold question of whether the evidence is admissible as an exception to the hearsay rule under state law. If not, it is excluded; if it is otherwise admissible we must then consider the confrontation issue. *State v. Drusch,* 139 Wis. 2d 312, 317, 407 N.W.2d 328, 330–31 (Ct. App. 1987). We use a two-step test to resolve confrontation claims: we first inquire "whether the prosecution has either produced or demonstrated the unavailability of the declarant"; then, "[o]nce a witness is shown to be unavailable, the next step is to inquire whether the hearsay ... bears adequate indicia of reliability." *State v. Nelson,* 138 Wis. 2d 418, 437–38, 406 N.W.2d 385, 393 (1987). (Footnote omitted.)

The parties concede that videotaped depositions are hearsay. In the case of child witnesses, however, secs. 967.04(7), (8), (9) and (10), Stats., permit admission of such depositions into evidence. It is thus admissible under state law and we turn to the sixth amendment requirements of witness unavailability and reliability.

Only the unavailability element concerns us here.[1] The state correctly points out that the declarant's unavailability is not an absolute requirement. *State v. Bauer,* 109 Wis. 2d 204, 212, 325 N.W.2d 857, 861–62 (1982). We have found few exceptions to the general rule, however; and none have any application to this case.[2] In the most recent case considering the rule and carving out an exception (for statements of a co-conspirator) the United States Supreme Court recognized the continuing applicability of the unavailability requirement in cases involving the use of prior testimony. *United States v. Inadi,* 475 U.S. 387, 394–96 (1986).

The state has not referred us to any other situation in which the unavailability rule has been held not to apply in a confrontation case. It simply asserts that the videotaped deposition is the "functional equivalent" of the witness's appearance in court, and thus should be allowed regardless of the witness's availability. Such a contention, however, raises technical questions relating to the nature and quality of

---

[1]Lindner concedes in his brief that the procedures used in this case satisfied the "reliability" element of the sixth amendment test.

[2]In *Hagenkord v. State,* 100 Wis. 2d 452, 302 N.W.2d 421 (1981), hospital records were allowed into evidence even though the prosecutor failed to establish that the compiler of the records was unavailable. The court reasoned that because hospital records are so inherently trustworthy and reliable, they are admissible regardless of the compiler's availability. *Id.* at 476, 302 N.W.2d at 434. Other exceptions that have been suggested include business records, official statements, learned treatises, trade reports, and laboratory analyses. *See Dutton v. Evans,* 400 U.S. 74, 95–96 (1970) (Harlan, J., concurring).

the audio and visual reproduction on which this record is wholly silent.[3]

As we have said, Lindner does not advance any direct challenge to the constitutionality of secs. 967.04(7)–(10), Stats., the law relied on by the trial court in admitting C.'s videotaped deposition, and we do not decide that issue. We hold only that use of such a deposition without a showing that the witness is unavailable would violate the defendant's sixth amendment right to confront witnesses.

Unavailability in the constitutional sense is not the equivalent of unavailability as a state law prerequisite to claiming an exception to the hearsay rule. We have already determined that the deposition was admissible under state law. But compliance with the hearsay rule does not insure compliance with the constitutional right of confrontation. *State v. Gollon,* 115 Wis. 2d 592, 600, 340 N.W.2d 912, 915–16 (Ct. App. 1983).

The question is whether C. was unavailable within the meaning of the sixth amendment, and "[t]he basic litmus of Sixth Amendment unavailability is … [that] 'a witness is not "unavailable" for purposes of … the exception to the confrontation requirement

---

[3]*See, e.g.,* the comments on possible distortion, etc., in videotape presentations in German, Merin & Rolfe, "Videotape Evidence at Trial," 6 Am. J. Trial Advoc. 209 (1982); Note, "The Testimony of Child Victims in Sex Prosecutions: Two Legislative Innovations," 98 Harv. L. Rev. 806, 823 (1985); Note, "Videotaped Testimony in Child Sexual Abuse Cases: *United States v. Binder,*" 23 Willamette L. Rev. 193, 203–05 (1987); Comment, "The Criminal Videotape Trial: Serious Constitutional Questions," 55 Or. L. Rev. 567, 574–75 (1976).

unless the prosecutorial authorities have made a *good-faith effort* to obtain his [or her] presence at trial.'" *Ohio v. Roberts,* 448 U.S. 56, 74(1980), *quoting Barber v. Page,* 390 U.S. 719, 724–25 (1968). (Emphasis in original.) We follow that rule in Wisconsin. *Gollon* 115 Wis. 2d at 600, 340 N.W.2d at 916.

We considered a similar question in *State v. Drusch, supra.* We there held that a child witness was unavailable within the meaning of the confrontation clause when she appeared at trial and almost immediately became distraught and "the reasons underlying her disability were adequately explored by the [trial] court . . . ." *Drusch,* 139 Wis. 2d at 322, 407 N.W.2d at 333.[4] As a result, we affirmed the trial court's decision to allow the child's preliminary hearing testimony to be read to the jury, concluding, under the second part of the confrontation analysis, that it was sufficiently trustworthy to satisfy sixth amendment standards. *Id.* at 322–24, 407 N.W.2d at 333–34.

■

In this case, however, the trial court made no such assessment or determination of unavailability. It merely recalled that C. was "not a good witness" at the preliminary hearing, that it was "an obvious

---

[4]In *Drusch,* the witness was called to the stand and began to cry and soon became unable to respond to questions. The prosecutor informed the court that she had reacted similarly each time he talked about the trial and that she told the victim-witness coordinator she could not testify. The court then questioned the child outside the jury's presence. When she began to cry again, "burying her head in her hands and sobbing," the trial court found that she was unavailable as a witness within the meaning of sec. 908.045(1), Stats., which allows use of a witness's "former testimony" where he or she is unable to testify because of "then existing physical or mental illness or infirmity." 139 Wis. 2d at 315–16, 407 N.W.2d at 330.

emotional and mental strain for her to testify," and the "the very act of describing such an experience to ... strangers ... is extremely difficult .... " We believe this falls short of the inquiry and findings we affirmed in *Drusch,* and thus was inadequate to establish C.'s unavailability within the meaning of the sixth amendment. The trial court's brief remarks consisted solely of its recollection that C. had some difficulty testifying at the earlier hearing. There was no other reference to C.'s ability or inability to testify at trial, and there was no evidence and no discussion of unavailability under sixth amendment or any other standards.

In *State v. Nelson, supra,* the supreme court recognized that the determination of sixth amendment unavailability may be made at a postconviction hearing. *Nelson,* 138 Wis. 2d at 440, 406 N.W.2d at 394. While slightly more than a year has elapsed since the trial in this case, there is nothing in the record to suggest that, despite the passage of time, an "adequate and meaningful" hearing on C.'s availability could not be afforded. *Id.* We will, therefore, remand to the trial court for this limited purpose. If the court determines that C. was unavailable within the meaning of the confrontation clause, it shall reinstate the conviction. If it rules that she was not unavailable, it shall order a new trial.

## II. *ADMISSION OF C.'S STATEMENTS TO HER TEACHER*

Lindner objected to admission of the teacher's testimony relating C.'s statements to her following the showing of the film. He claimed that the statements were hearsay for which no exception exists. The trial court admitted the statements under the residual

exception, sec. 908.03(24), Stats., explaining that the statements carried "comparable circumstantial guarantees of trustworthiness." Lindner argues that because the statements were not contemporaneous to the assault and were elicited rather than volunteered, they do not meet sec. 908.03(24) standards. We disagree.

In *Mitchell v. State,* 84 Wis. 2d 325, 331, 267 N.W.2d 349, 352 (1978), quoting Federal Advisory Committee's Note, 59 Wis. 2d at R302, the supreme court recognized that "[t]he residual exception to the hearsay rule in sec. 908.03(24) is designed to allow for the growth of the evidence code to provide for 'unanticipated situations which demonstrate a trustworthiness within the spirit of the specifically stated exceptions,'" and that the character of the statements made and the surrounding circumstances are the focus of the admissibility determination. *Id.* at 333, 267 N.W.2d at 353. The court has taken a more liberal view of one of the specified exceptions—that dealing with "excited utterances"—where alleged victims of child sexual assault are involved. *Bertrang v. State,* 50 Wis. 2d 702, 706–07, 184 N.W.2d 867, 869 (1971). It did so based upon its recognition that child victims are especially vulnerable to fear and memory lapses. *Id.* at 707–08, 184 N.W.2d at 870.

The statements in question here, though admitted under the "residual" exception, bear a strong resemblance to excited utterances. *See Mitchell,* 84 Wis. 2d at 332, 267 N.W.2d at 352–53. C., whom we have noted is mildly retarded, viewed a film designed to explain sexual abuse to children and to encourage them not to hide such abuse. Her teacher noted that she became noticeably "uneasy or fidgety" while watching the film. It is understandable that C.'s original fear and

trauma might be reawakened by the film. Though three weeks had passed since the assault, the teacher's testimony as to C.'s excited appearance during and after the film provides an evidentiary basis for the trial court's conclusion that her statements to the teacher demonstrate a trustworthiness within the spirit of the excited utterance exception to the hearsay rule. Sec. 908.03(2), Stats.

Lindner also argues that the statements cannot be considered spontaneous because they were made in response to the teacher's inquiry. However, the *Bertrang* court upheld the admission of a child's statements in response to specific questions from her mother, stating that elicitation does not necessarily preclude the statements' admission. *Bertrang,* 50 Wis. 2d at 707, 184 N.W.2d at 870. In this case, the teacher's question inquiring whether C. "had any touching problems" was a general, noninflammatory question which does not suggest an answer. In addition, C. identified Lindner and generally described the incident without any further inquiry or prompting. C.'s remarks were sufficiently spontaneous to support admission under either sec. 908.03(2) or 908.03(24), Stats.

The situation here is distinguishable from that in *State v. Sorenson,* 135 Wis. 2d 468, 400 N.W.2d 508 (Ct. App. 1986), *petition for review granted,* 136 Wis. 2d 561, 407 N.W.2d 559 (1987),[5] where we held that a child's statement about a sexual assault was inadmissible because it had been elicited and was too remote

[5]In *Sorenson,* the alleged victim was declared unavailable and her statements were admitted at the preliminary hearing pursuant to sec. 908.045(1), Stats. However, on appeal, the state relied upon secs. 908.045(4) and 908.045(6) for admission.

in time. In *Sorenson,* the statements came some six weeks after the alleged incident, and then only after an hour of conversation with a social worker who asked the child "whether any family member other than her uncle had had sexual intercourse with her." *Id.* at 470, 400 N.W.2d at 509. There was not, as here, an independent triggering event, and the child's response in *Sorenson* was in response to a very specific, leading question asked an hour into a lengthy interview. Considering the instant case on its particular facts, and focusing on the statements' character and the surrounding circumstances as we are instructed to do by *Mitchell,* 84 Wis. 2d at 333, 267 N.W.2d at 353, and *Bertrang,* 50 Wis. 2d at 707, 184 N.W.2d at 870, we conclude that C.'s statements, admitted through the testimony of her teacher, contain adequate circumstantial guarantees of trustworthiness and were properly admitted under sec. 908.03(24), Stats.

### III. *TESTIMONY OF C.'S MOTHER AND THE INVESTIGATING OFFICER*

█

C.'s mother and a police officer were both allowed to testify as to statements C. made to them following the assault. The statements, which identified Lindner and described the incident, were held to be admissible as "prior consistent statements" within the meaning of sec. 908.01(4)(a)2, Stats., which provides that:

> A statement is not hearsay if:
> (a) The declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is:
> . . . .

> 2. Consistent with his [or her] testimony and is offered to rebut an express or implied charge against him [or her] of recent fabrication or improper influence or motive ....

Lindner argues first that because C. did not testify in person at the trial, but only by videotape, her statements do not meet the threshold requirement that "the declarant testif[y] at the trial." This is not a question of availability of the witness in the constitutional sense; rather it is one of state law admissibility of the evidence under the hearsay rule. As we have noted, C.'s videotaped testimony was taken before the judge, Lindner and his counsel were present, and there was full opportunity for cross-examination. We consider this to meet the "at trial" requirement of sec. 908.01(4)(a). Indeed, the record indicates that C. was in fact cross-examined about her statement to the officer.

Lindner also argues that the "recent fabrication" exception is inapplicable here because he maintained that the allegation of sexual assault had been fabricated from the beginning. However, the evidence was admitted in the wake of Lindner's counsel's suggestion at the close of his cross-examination that C.'s testimony had been "rehearsed"; that is, that she had been improperly influenced by prosecutor.

In *Thomas v. State,* 92 Wis. 2d 372, 389–90, 284 N.W.2d 917, 926 (1979), the supreme court upheld the admission of a witness's prior consistent statements under sec. 908.01(4)(a), Stats., to rebut an attempt to impeach her credibility by suggesting that her testimony had been improperly influenced because she had been "told what to say by her mother ... and the prosecutor." Lindner's challenge to C.'s credibility was

much the same in this case. He concluded his cross-examination of C. with the suggestion that she had rehearsed her testimony with the prosecutor, and he returned to the point several times in closing argument to the jury, stating repeatedly that her testimony was "obviously coached" and "rehearsed," and that she was merely "parroting" what others wanted her to say. Under these circumstances, the trial court did not abuse its discretion by allowing the evidence as rebutting an explicit or implied charge of improper influence on her testimony within the meaning of sec. 908.01(4)(a)2, Stats.

Lindner also makes a one-sentence argument that admission of the testimony violated his confrontation rights because it did not bear adequate indicia of reliability. We disagree. He had ample opportunity to confront and cross-examine C. with respect to the statements and he did so at some length. The video-taped deposition was viewed by the jurors, who thus were able to observe her demeanor. We consider that Lindner had an "effective means to test [the] evidence," and that the jury had a "satisfactory basis for evaluating the truth of the prior statement." *Drusch,* 139 Wis. 2d at 323, 407 N.W.2d at 333, quoting *State v. Bauer,* 109 Wis. 2d 204, 211, 325 N.W.2d 857, 861 (1982).

We reverse solely on the issue of whether C. was unavailable to testify within the meaning of the confrontation clause and remand to the trial court for further proceedings consistent with this opinion. In all other respects, we affirm the conviction.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded for further proceedings consistent with this opinion.