STATE of Wisconsin, Plaintiff-Respondent,

v.

Donald R. SORENSON, Defendant-Appellant.

Court of Appeals

*No. 87–0245–CR. Submitted on briefs April 22, 1988.—Decided September 7, 1989.*

(Also reported in 449 N.W.2d 280.)

473

For the defendant-appellant the cause was submitted on the briefs of *Ruth S. Downs,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, by *Sharon Ruhly.*

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. Donald Sorenson appeals from a judgment of conviction for first-degree sexual assault, sec. 940.225(1)(d), Stats. 1985, sexual contact or intercourse with a person twelve years of age or younger, and from denial of his postconviction motion. The child, L.S., was born February 5, 1978, and is defendant's niece.

The issues are whether: (1) the evidence at the preliminary examination was sufficient to bind defendant over for trial; (2) using a videotape at trial of the child's testimony at the preliminary hearing (which the state concedes was not a deposition or the equivalent of in-court testimony) as a substitute for her testimony at the trial violated the hearsay rules; (3) using the videotape at the trial violated defendant's federal and state constitutional right of confrontation; (4) using the videotape violated defendant's statutory right to be present at trial; (5) denying defendant's motion for permission to subpoena the child violated his federal and state constitutional rights to compel the attendance of witnesses on his behalf; (6) the trial court should have excluded the testimony of certain prosecution witnesses regarding what the child said to them about the incidents of intercourse; and (7) the admission of hearsay testimony as to the display of fear by the child was plain error. If defendant's constitutional rights were violated, we must also decide what actions are required on remand.

We conclude that the evidence at the preliminary examination justified the bindover. Use of the videotaped testimony at the trial violated the hearsay rules of evidence and defendant's right to confrontation. The trial court violated defendant's constitutional right to compel the attendance of witnesses. The testimony by certain prosecution witnesses regarding what the child

told them was properly admitted under the hearsay rules but violated defendant's confrontation right.

The constitutional violations resulted from the prosecution's failure to demonstrate a factual basis for the conclusion that, because of the risk of psychological trauma to her, the child was unavailable to testify. After weighing various factors, we remand for a determination whether a hearing on retrospective findings regarding availability can be meaningfully held and, if so, for such findings to be made, and we otherwise direct that a new trial be held.

### 1.   BACKGROUND

Both defendant and his brother, the father of L.S., were charged with first-degree sexual assault upon her. The charges arose out of information a Juneau county department of social services social worker obtained from L.S. The history of the charges is partly related in the appellate reports involving the father, *State v. Sorenson,* 135 Wis. 2d 468, 400 N.W.2d 508 (Ct. App. 1986) (*Sorenson I*) and *State v. Sorenson,* 143 Wis. 2d 226, 421 N.W.2d 77 (1988) (*Sorenson II*). As stated in *Sorenson II,* defendant and the father were arrested and charged in March 1985.

Defendant's preliminary hearing was held on March 21, 1985. On March 26, 1985, the father's preliminary hearing was held. Both preliminaries were videotaped, and at both hearings the same social worker, deputy sheriff, and examining physician testified. The father was excluded from the courtroom when L.S. testified at his preliminary hearing and defendant agreed to being excluded from the courtroom during L.S.'s testimony after she had identified him.

L.S. testified at her father's jury trial held on September 10, 1985. That jury saw and heard the videotape

of her testimony at her father's preliminary hearing, a second videotape of her testimony at a juvenile placement hearing, and a third videotape, the one taken at defendant's preliminary. The physician's testimony at the preliminary was incorporated by stipulation.

L.S. did not testify at defendant's trial, held on May 7, 1986. The court ruled that L.S.'s videotaped testimony at defendant's preliminary hearing could be substituted for her testimony at his trial. In addition to seeing the videotape, the jury had a transcript of her prior testimony and heard the testimony of the social worker, the deputy sheriff, and the examining physician. The child's mother and paternal grandmother testified at defendant's trial, as did defendant's stepmother. Defendant took the stand. The jury found him guilty, the court denied a postconviction motion to dismiss or grant a new trial, and this appeal resulted.

The same judge presided at both preliminary hearings and both jury trials.

## 2.   SUFFICIENCY OF EVIDENCE AT THE PRELIMINARY

A preliminary examination is held to determine whether "there is probable cause to believe a felony has been committed by the defendant." Sec. 970.03(1), Stats. If probable cause has been shown, the court must bind the defendant over for trial. If not, the court must discharge the defendant. Sec. 970.03(7) and (9).

Even after a trial and conviction, a defendant is entitled to appellate review of the bindover for trial. *State v. Olson,* 75 Wis. 2d 575, 584–85, 250 N.W.2d 12, 17 (1977); *State ex rel. McCaffrey v. Shanks,* 124 Wis. 2d 216, 224, 369 N.W.2d 743, 748 (Ct. App. 1985). We

reached the same conclusion in *Sorenson I,* 135 Wis. 2d at 471, 400 N.W.2d at 510, which *Sorenson II* reversed on other grounds.

Defendant concedes that someone had sexually abused the child but denies that it was he. The issue is whether the evidence at the preliminary examination supports the conclusion that defendant probably did abuse the child. The issue is one of law. *State v. Dunn,* 121 Wis. 2d 389, 398–99, 359 N.W.2d 151, 155 (1984).

At the time of the preliminary examination, the child was about seven years old. Medical testimony established that she had a mental age of three or four. During her testimony at the preliminary, she referred to defendant as "Donnie." Using anatomically correct dolls, she identified the girl doll as herself and the boy doll first as Ronnie (her father) and then as Donnie. When asked what the dolls were doing, she replied that they were "humping" in Donnie's house on his couch. Using the dolls, she showed what happened. She took the pants off the boy doll, identified Donnie's "wiener" and testified as follows:

> Q: L., did you show me a minute ago him putting that wiener somewhere on the girl doll?
>
> A: NOD HEAD YES.
>
> Q: Where was that?
>
> A: In the hole.
>
> Q: Whose hole?
>
> A: There is a hole.
>
> Q: Whose hole is that?
>
> A: Mine.

On cross-examination, when asked whether many people had done this to her and whether defense counsel had

480

done it, she answered yes. When asked whether Donnie did it, she said no.

The trial court concluded that probable cause existed to believe that the defendant had committed a felony. At the postconviction hearing, the court elaborated on that conclusion, saying that taking into account the nature of the crime, the mental age of the child, and the need to protect child witnesses, "the most narrow application of the believable and plausible test is appropriate, lest all assailants of young, unstable, difficult witnesses be freed from facing trial." Defendant contends that the trial court applied an impermissibly low burden of proof.

Whether the trial court applied the wrong burden of proof is immaterial. An appellate court must search the record made at the preliminary for any substantial ground to support the bindover. *Sorenson II,* 143 Wis. 2d at 251, 421 N.W.2d at 87. That ground is a "believable or plausible account." *Dunn,* 121 Wis. 2d at 398, 359 N.W.2d at 155. If it exists, then the defendant must be bound over for trial, even if a contrary but believable or plausible account also exists. *Id.* at 400, 359 N.W.2d at 156.

Believable and plausible evidence produced at the preliminary examination supports the conclusion that defendant probably sexually assaulted the child. No narrow application of the believable and plausible test is necessary for that conclusion. Her graphic use of the dolls, the names she gave to them and her description of what happened are enough, notwithstanding later contradictions in her testimony. The trial court properly bound defendant over for trial.

481

### 3. USE OF VIDEOTAPED TESTI-MONY—HEARSAY AND CONFRONTATION

The state's pretrial motion requested that the court admit the videotape of L.S.'s prior testimony at defendant's preliminary hearing as evidence at the trial, but the purpose of the motion was to substitute the videotape for her trial testimony. The prosecutor presented no evidence to support the motion but asked the trial court to recall that, although the child was about eight years old, she had less than normal intelligence and had difficulties (which the prosecutor did not describe) when testifying in her father's case. The prosecutor asserted that it would be detrimental to L.S. to require her to testify. Defendant responded that to allow use of the videotape at the trial would violate the hearsay rules and his right of confrontation.

The trial court treated the videotape as a deposition. For that reason, the court held that the videotape was not hearsay evidence and had no occasion to decide whether an exception to the hearsay rule applied. The court said that it was familiar with the child, having seen her on a number of occasions, and noted her chronological age and her lower mental age. The court said that this was "a type of matter in which it is extremely difficult for a child of that age to be . . . testifying . . . [and that] the court has to use its discretion, exercise the broad latitude it can in protecting the interest of the child." The court found that "the child *might be* severely emotionally damaged by being required to go through this trial and offer that testimony again." (Emphasis added.) The court concluded that use of the videotape would not violate defendant's right to confrontation, since he had an opportunity to be present when

the child testified and his counsel had cross-examined her.

At the hearing on defendant's postconviction motion for a new trial, the court heard no evidence regarding L.S.'s availability at the trial. The physician who had examined L.S. did not testify. The prosecutor argued, however, that the court's decision to allow the state to use her videotape was based on her prior appearances, her unavailability, the fit of her testimony within the hearsay exception for prior recorded testimony, and the absence of a violation to defendant's confrontation rights. The court again held that the videotape was admissible as a deposition and was not hearsay. It ruled that defendant had an opportunity to confront the child and found that "[e]xamination at trial would have [resulted in] further traumatization of an already victimized child witness."

The state makes no attempt to justify admission of the videotape at defendant's trial as a deposition. Nor does the state attempt to justify admission on grounds that the videotaped testimony was in-court testimony. The state argues only that the trial court's pretrial ruling on admission of the videotape is the equivalent of a finding that the child was unavailable for both hearsay and confrontation purposes, that the videotape is admissible as former testimony under sec. 908.045(1), Stats., and that the videotape meets the reliability requirements of *Ohio v. Roberts,* 448 U.S. 56 (1980).

■■

Unavailability is an element of the former testimony hearsay exception. Section 908.045, Stats., provides in relevant part:

> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) Testimony given as a witness at another hearing of the same or a different proceeding . . . at the instance of or against a party with an opportunity to develop the testimony by direct, cross-, or redirect examination, with motive and interest similar to those of the party against whom now offered.

Unavailability is also an element of the confrontation clause requirements announced in *Roberts,* 448 U.S. at 65. That case held that a transcript of a witness's testimony at a defendant's preliminary examination is admissible at trial and does not violate the right to confrontation if the witness has been shown to be unavailable and the witness's hearsay statements, consisting of his prior testimony, bear adequate indicia of reliability. *Id.* at 65–66. The burden is on the prosecution to produce or demonstrate the unavailability of the witness. *Id.* at 74–75. Reliability can be inferred without more if the evidence falls within a firmly rooted hearsay exception or if particularized guarantees of trustworthiness are shown. *Id.* at 66.

The unavailability requirement in confrontation analysis continues unabated for the use at trial of an absent witness's prior testimony at a preliminary examination, notwithstanding *United States v. Inadi,* 475 U.S. 387 (1986). The *Inadi* opinion leaves no doubt that the unavailability requirement does not apply in all cases in which the prior statement of an absent witness is offered at trial. The *Inadi* Court made it clear, however, that the confrontation analysis in *Roberts,* and therefore the unavailability requirement, applies when the prosecution proposes to substitute testimony from a prior judicial proceeding in place of live testimony at the trial. *Inadi,* 475 U.S. at 393–94.

Unavailability of a child sexual assault victim need not be shown for either hearsay or confrontation purposes when the state proposes to use at trial the child's videotaped testimony taken pursuant to sec. 967.04(7)–(10), Stats. *State v. Thomas,* 144 Wis. 2d 876, 425 N.W.2d 641 (1988) *(Thomas I), confirmed and supplemented in light of Coy v. Iowa,* 487 U.S. —, 101 L. Ed. 2d 857 (1988), 150 Wis. 2d 374, 442 N.W.2d 10 (1989) *(Thomas II)*. The reason is that "a videotaped deposition under sec. 967.04(7)–(10), Stats., is the functional equivalent of live testimony and ensures the fundamental protections of the confrontation clause, namely the right of cross-examination, the observation of witness demeanor and the requirement of testimony under oath." *Thomas I* at 890, 425 N.W.2d at 646. A videotaped deposition is not hearsay. It is in-court testimony. *Thomas II* at 391, 442 N.W.2d at 18.

But in the appeal before us the state grants that the factors which warranted admission of the videotape in *Thomas I* without a finding of unavailability are not present here. The state concedes that the videotape of L.S.'s testimony at defendant's preliminary hearing is not in-court testimony or its functional equivalent.

As we have noted, former testimony is admissible under sec. 908.045, Stats., if the declarant is "unavailable as a witness." Section 908.04(1) provides that unavailability as a witness includes certain situations. None of the situations described in sec. 908.04(1) apply here, except possibly subsec. (d): the witness "[i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." The state asserts that subsec. (d) applies, relying on the trial court's finding that L.S. "might be severely emo-

tionally damaged" if she were to testify at the trial. The state asserts that this is a finding that L.S. would be severely psychologically damaged and therefore was unavailable to testify.

At no point before, during, or after the trial did the trial court expressly find that L.S. was or was not available to testify. However, in its postconviction ruling the trial court said that for L.S. to testify at the trial "would have [resulted in] further traumatization of an already victimized child witness." This removes our doubts regarding the court's initial opinion as to the likelihood of harm. We infer that when making its pretrial ruling the court impliedly found that L.S. was not available as a witness at the trial because having to testify would cause her severe psychological damage. The question remains whether a factual basis exists for the implied finding.

No Wisconsin case brought to our attention has held that, absent a disabling emotional breakdown on the stand, anything less than a medical basis can support a ruling that because testifying would cause the witness to suffer severe psychological damage a witness is unavailable for hearsay and confrontation analysis purposes. *Thomas I* and *Thomas II* held that a trial court did not abuse its discretion when it concluded without the benefit of medical evidence that it was necessary to take a deposition of a child sexual assault victim to avoid traumatization at a trial. 144 Wis. 2d at 894, 425 N.W.2d at 648; 150 Wis. 2d at 388, 442 N.W.2d at 17. But *Thomas I* and *Thomas II* emphasize that unavailability simply is not an issue in such a case. 144 Wis. 2d at 890, 425 N.W.2d at 646; 150 Wis. 2d at 392, 442 N.W.2d at 18–19. As we have said, here the state concedes that the videotape of L.S.'s testimony was not a deposition.

A witness is properly found for psychological reasons to be unavailable to testify on the basis of adequate medical evidence. *See State v. Nelson,* 138 Wis. 2d 418, 441–43, 406 N.W.2d 385, 395 (1987) (unavailability supported by psychologist's testimony that child would not respond to questioning and could be psychologically traumatized);[1] *State v. Burns,* 112 Wis. 2d 131, 139, 332 N.W.2d 757, 762 (1983) (victim's unavailability for mental health reasons supported by testimony of psychiatrist);[2] *Sheehan v. State,* 65 Wis. 2d 757, 765–66, 223 N.W.2d 600, 605 (1974) (no basis for ruling victim could not testify because of mental disability when psychiatrist who testified only contacted victim by telephone between deposition and trial and was unaware that victim had testified at preliminary examination and on deposition); *State v. Christian,* 142 Wis. 2d 742, 747, 419 N.W.2d 319, 321 (Ct. App. 1987) (child's unavailability supported by psychologist's testimony at trial); *State v. Gollon,* 115 Wis. 2d 592, 601, 340 N.W.2d 912, 916 (Ct. App. 1983) (parent's testimony that child was too frightened to testify insufficient to support finding of unavailability); *cf. State v. Drusch,* 139 Wis. 2d 312, 319, 407 N.W.2d 328, 331–32 (Ct. App. 1987) (medical evidence unnecessary for finding of unavailability when child broke down on stand at trial).

This is not a situation in which the record shows that a witness was put on the stand and then refused to

---

[1] In *Nelson v. Farrey,* 688 F. Supp. 1304 (E.D. Wis. 1988), the federal district court conditionally granted *habeas corpus* relief, but was reversed on appeal, 874 F.2d 1222 (7th Cir. 1989).

[2] In *Burns v. Clusen,* 599 F. Supp. 1438 (E.D. Wis. 1984), the federal district court rejected this conclusion but found the error harmless, and the seventh circuit affirmed, 798 F.2d 931 (7th Cir. 1986).

or could not testify. L.S. was never put on the stand at defendant's trial. Moreover, she had testified at her father's trial, at defendant's preliminary, and at a juvenile placement proceeding. No evidence was offered that her testimony on any of those occasions caused her any, much less severe, psychological trauma. At her father's preliminary she answered no questions regarding sexual contact with him, but she did testify at his trial. *Sorenson II,* 143 Wis. 2d at 234, 237, 421 N.W.2d at 80, 81. This record contains nothing to show that she could not or would not testify at defendant's trial.

We conclude that this record contains insufficient evidence to support a finding that L.S. would have been severely psychologically damaged by testifying at defendant's trial. The trial court's conclusion that she was unavailable lacks an adequate factual basis. The state's use of her videotaped testimony therefore violated the hearsay rules of evidence and defendant's right of confrontation under the United States and Wisconsin Constitutions.

### 4.   STATUTORY RIGHT TO BE PRESENT WHEN L.S. TESTIFIED

Defendant claims that his right under sec. 971.04(1)(b) and (d), Stats., to be present when L.S. testified was violated. We do not reach the issue.

### 5.   RIGHT TO SUBPOENA L.S. AS COMPLAINING WITNESS

The trial court refused to allow defendant to subpoena L.S. as a witness at the trial. The sixth amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to have

compulsory process for obtaining witnesses in his favor." The right to compulsory process is binding on the states by virtue of the fourteenth amendment. *Washington v. Texas*, 388 U.S. 14, 18 (1967). The right is a fundamental element of due process of law. *Id.* Wisconsin Const. art. I, sec. 7, guarantees the same right of compulsory process.

The right of compulsory process and the right of confrontation are directly connected. Both were created by the same provision in the Bill of Rights, the sixth amendment. Each exists in connection with the other. "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense." *Washington,* 388 U.S. at 19. The right to confront is useless without the right to compel the attendance of witnesses. The right to compel attendance exists to provide confrontation.

The right of compulsory process is not absolute. It does not include the futile act of giving a defendant the right to secure the attendance of witnesses whose testimony he has no right to use. *Id.* at 23. The right of compulsory process may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Rock v. Arkansas,* 483 U.S. 44, 55 (1987).

The state has failed to prove the existence of a legitimate interest countervailing defendant's right to use the testimony of L.S. Defendant therefore had a right under the United States and Wisconsin Constitutions to secure her attendance. The trial court's refusal to permit defendant to subpoena L.S. denied his constitutional right to compulsory process.

489

### 6. TESTIMONY OF SOCIAL WORKER, DEPUTY SHERIFF, AND ATTENDING PHYSICIAN—HEARSAY AND CONFRONTATION

We reach these issues because of the possibility that if the testimony of these three prosecution witnesses was properly admitted, the hearsay and confrontation errors with respect to L.S. were harmless and the judgment of conviction would have to be affirmed. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) (denial of right to confrontation may be harmless error).

The social worker testified at defendant's trial that she met L.S. at her school on March 14, 1985. L.S. did not want to talk. The social worker asked L.S. if she would like the social worker to return with dolls which might help her explain what had happened. L.S. asked her to come back the following day, and the social worker did so. The meeting was at the school, and the social worker had anatomically correct dolls with her.

The court permitted the social worker to testify over defendant's repeated hearsay objections. The social worker testified that L.S. was very verbal and that she freely and graphically demonstrated sexual intercourse through use of the dolls. The social worker stated that L.S. gave her name to the female doll and the name of Donnie to the male doll. The social worker testified that she never suggested a name for either doll. About a half-hour into the interview L.S. accused her father of the same thing.

The social worker testified that, less than an hour after L.S.'s demonstration with the dolls, the social worker contacted the sheriff's department. When the deputy was present L.S. said, "Donnie humps me." When asked what that meant, L.S. again demonstrated an act of sexual intercourse. L.S. indicated that inter-

course with her father only occurred in the bathroom, but with Donnie it occurred on the couch or in her bedroom.

The deputy sheriff's testimony essentially corroborated that of the social worker. The deputy added that she had no trouble communicating with L.S. but her attention span was short and she did not appear to have the normal intelligence of a seven-year-old child.

The testimony of the social worker and deputy was properly admitted under the hearsay rules, even though L.S. was not shown to be unavailable to testify at the trial. *Sorenson II* held that testimony as to prior statements by a young sexual assault victim is admissible under the residual hearsay exception, sec. 908.03(24), Stats., whether or not the child is available to testify, if circumstantial guarantees of trustworthiness are shown. 143 Wis. 2d at 250 & n. 9, 421 N.W.2d at 86. Section 908.03 provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . (24) A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."

The *Sorenson II* court reviewed the factors which a trial court should weigh when making an assessment of the admissibility of a child's statements under the residual exception. Those factors consist of the attributes of the child; the child's relationship to the person to whom the child's statement was made; the circumstances under which the statement was made; the content of the statement itself; and other corroborating evidence, such as physical evidence of assault, statements made to others, and the like. *Sorenson II,* 143 Wis. 2d at 245–46, 421 N.W.2d at 84–85.

The *Sorenson II* court made a *de novo* analysis of the statements L.S. made to the social worker and, inferentially, to the deputy sheriff, and concluded that L.S.'s statements possessed sufficient guarantees of trustworthiness to be admissible, not only under the residual hearsay exception in sec. 908.045(6), Stats., L.S. having been declared to have been an unavailable witness, but also under sec. 908.03(24). We see no reason for an independent analysis to determine whether L.S.'s statements to the social worker and to the deputy sheriff possessed sufficient guarantees of trustworthiness to be admissible under sec. 908.03(24), the residual exception. The analysis has largely been made by the *Sorenson II* court. The evidentiary circumstances relied on by the *Sorenson II* court exist in the record before us and do not differ markedly.

We conclude that the hearsay rules were satisfied as to statements by L.S. to the social worker and the deputy sheriff to which the latter testified at the trial. We postpone discussion whether these statements satisfy confrontation requirements until after we review defendant's hearsay objections to the examining physician's testimony.

The doctor testified that he saw L.S. on March 18, 1985, when she was brought in by the social worker. He examined L.S. to determine whether she had been sexually abused. He asked her why she came to see him. L.S. replied that her uncle "had put his wiener" into her. Her vagina had a "gaping" opening, about ten times larger than that of the normal opening for a child of her age. In the doctor's opinion, the results of his examination were consistent with a finding of sexual abuse and showed a "chronic, longstanding hymenal vaginal irritation," the

492

last occurrence having been within about seven days of his examination.

The hearsay objection to the doctor's testimony has no merit. The doctor's testimony was admissible under sec. 908.03(4), Stats., because it related statements made by a sexually abused child for purposes of medical diagnosis. *Sorenson II,* 143 Wis. 2d at 252, 421 N.W.2d at 87.

The question remains whether defendant's constitutional rights of confrontation were denied when the trial court permitted the social worker, the deputy, and the doctor to testify to statements L.S. had made to them. That the hearsay rules have been satisfied is insufficient to establish that a criminal defendant's right of confrontation has also been satisfied.

> It has long been recognized that the "Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots." *Dutton v. Evans,* 400 U.S. [74, 86 (1970)]. They are "generally designed to protect similar values." *California v. Green,* 399 U.S. 149, 155 (1970). However, "the hearsay rule is not congruent in all cases with the requirements of the confrontation clause." *Nabbefeld v. State,* 83 Wis. 2d 515, 522, 266 N.W.2d 292 [296] (1978); *see also Dutton v. Evans,* 400 U.S. at 86. In *State v. Lenarchik,* 74 Wis. 2d [425, 432, 247 N.W.2d 80, 84 (1976)], we held that "compliance with a state's hearsay rule does not *ipso facto* ensure compliance with the constitutional mandate for confrontation in a criminal case." Therefore, in determining whether hearsay evidence is admissible in a criminal case, it is necessary to look beyond the hearsay rules.

*State v. Bauer,* 109 Wis. 2d 204, 210, 325 N.W.2d 857, 860-61 (1982).

Thus, in *Gollon,* 115 Wis. 2d at 599, 602–03, 340 N.W.2d at 915, 917, we held that out-of-court statements by a six-year-old child to her mother and another adult that the defendant had sexually assaulted her satisfied the hearsay rules but not defendant's right to confrontation, since the child had not been shown to be unavailable to testify at the trial.

The state contended in *Gollon,* as here, that unavailability need not be shown. *Id.* at 601, 340 N.W.2d at 916. We noted that the unavailability requirement is subject to limited exceptions. We concluded that the limited exceptions apply when production of the declarant will be unduly inconvenient and of small utility to the defendant. *Id., citing Hagenkord v. State,* 100 Wis. 2d 452, 473, 302 N.W.2d 421, 432 (1981). The *Hagenkord* court applied that exception after quoting extensively from the concurrence of Justice Harlan in *Dutton v. Evans,* 400 U.S. at 95–96, that absent declarants need not be produced "where production would be unduly inconvenient and of small utility to a defendant." *Hagenkord* at 473, 302 N.W.2d at 432. There is no suggestion here that production of L.S. as a witness would have been of no or little utility to defendant.

The *Inadi* Court subsequently announced that *Roberts* should not be read to mean that no out-of-court statement is admissible for confrontation purposes without a showing of the absent declarant's unavailability. *Inadi,* 475 U.S. at 392. The *Inadi* Court held that the unavailability rule does not apply to coconspirators' out-of-court statements which satisfy the coconspirator exemption from the definition of hearsay, Fed. R. Evid. 801(d)(2)(E). The prosecutor had recorded telephone conversations between coconspirators and played the taped conversations for the jury at the trial. The defendant, a coconspirator, objected on confrontation

grounds, contending that the recorded statements by other persons to the conversations were inadmissible unless those persons were first shown to be unavailable witnesses.

For several reasons, the *Inadi* Court held that a showing of unavailability was not necessary when the coconspirator hearsay exemption applies to absent declarants.[3] None of the factors which induced the *Inadi* court to except the coconspirator hearsay exemption from the unavailability requirement apply here. Had

---

[3] The reasons relied on by the *Inadi* Court are as follows: First, statements made while a conspiracy is in progress "provide evidence of the conspiracy's context that cannot be replicated, even if the declarant testifies to the same matters in court." *Inadi* at 395. Second, between the time of the statements and the trial, the absent declarant and the defendant "will have changed from partners in an illegal conspiracy to suspects or defendants in a criminal trial, each with information potentially damaging to the other." *Id.* Third, the court saw little benefit in applying the unavailability rule. The statements could be admitted if the declarant was unavailable or was available and produced by the prosecution. Thus, the unavailability rule was not likely to produce much testimony that added to the truth determining process. *Id.* at 396–97. Fourth, applying the unavailability rule in coconspirator cases would impose significant burdens on the prosecution, since it "automatically adds another avenue of appellate review in these complex cases. The coconspirator rule apparently is the most frequently used exception to the hearsay rule." *Id.* at 398. The rule would require the prosecution to identify all declarants, locate them and endeavor to ensure their continuing availability. Incarcerated declarants would have to be transported to and from the courthouse, with the increased risk of escape. The rule would require the government to keep track of unincarcerated defendants or risk a court determination that the government had not made good faith efforts to produce them at the trial. *Id.* at 399.

L.S. testified, the truth-seeking process may have benefited. Defendant's trial counsel (who did not represent the defendant at the preliminary) argued to the jury that when L.S. first brought the sexual intercourse to the attention of the authorities, she falsely named her uncle as the perpetrator in order to protect her father, and when she later named her father, she was afraid or unwilling to change her statement about her uncle. Counsel could not cross-examine L.S. on the basis of that theory and the jury had only reports of witnesses that she feared defendant to test the theory. Yet her videotape disclosed no fear of defendant, and because L.S. was not present at the trial, it was impossible for the jury to observe her demeanor in his presence.

We conclude that because L.S. had not been shown to have been an unavailable witness, permitting the social worker, deputy, and examining physician to testify to statements L.S. had made to them violated defendant's constitutional right of confrontation. Because *all* of the testimony concerning the incidents of intercourse, that contained in the videotape and that of the social worker, deputy sheriff, and physician, violated defendant's constitutional rights, the error was not harmless. *Gollon,* 115 Wis. 2d at 602, 340 N.W.2d at 917.

### 7. HEARSAY TESTIMONY BY OTHER PROSECUTION WITNESSES

Three prosecution witnesses, the defendant's mother, grandmother, and stepmother, testified that L.S. displayed fear when defendant appeared, his name was mentioned, or she saw his picture. Defendant did not object to that testimony at the trial. He asserts that the testimony was plain error which we should review on appeal under sec. 901.03(4), Stats. We disagree.

Error may not be predicated upon a ruling which admits evidence unless an appropriate objection or a motion to strike is made on the record. Sec. 901.03(1)(a), Stats. The rule does not preclude our taking notice of plain errors even though they were not brought to the attention of the judge. Sec. 901.03(4). Defendant cites no case holding that hearsay evidence or evidence violating the right to confrontation is plain error. The case law establishes that a defendant loses the right to raise the confrontation issue by failing to object at trial. *State v. Marshall,* 113 Wis. 2d 643, 653, 335 N.W.2d 612, 617 (1983).

We conclude that defendant has not shown that the testimony of any of the three prosecution witnesses was plain error.[4]

8. REMAND FOR HEARING ON QUESTION OF VICTIM'S UNAVAILABILITY AT TIME OF ORIGINAL TRIAL

Rather than simply order a new trial, we remand for a hearing at which the trial court may take additional evidence on the question of the unavailability of L.S. at the time of the original trial. On remand, the trial court should first determine whether a meaningful *nunc pro tunc* hearing on unavailability can be held. If a meaningful *nunc pro tunc* hearing cannot be held then the court should proceed with a second trial. If it can be held, then the court should determine whether the facts were such

---

[4]We note, without deciding, that the relatives' testimony may have been admissible as reports of excited utterances by a young child. *See, e.g., State v. Padilla,* 110 Wis. 2d 414, 419, 329 N.W.2d 263, 266 (Ct. App. 1982).

that L.S. was unavailable to testify at the original trial. If that is the case, then the judgment of conviction and the sentence should be reinstated. If not, then defendant is entitled to a second trial.

Such a remand is nothing more than a variant on similar procedures adopted in other cases. In another child sexual assault case, the supreme court of this state approved the use of a retrospective hearing on the child's availability. *State v. Nelson,* 138 Wis. 2d at 440-41, 406 N.W.2d at 394. In *Nelson* the trial court made a nonavailability determination eight months after the trial. *See also State v. Johnson,* 133 Wis. 2d 207, 224-25, 395 N.W.2d 176, 184-85 (1986) (remand for retrospective determination of accused's competency to stand trial although three or four years had passed since trial); *Renner v. State,* 39 Wis. 2d 631, 637, 159 N.W.2d 618, 621 (1968) (remand for retrospective determination whether defendants' confessions were voluntary); *State v. Haskins,* 139 Wis. 2d 257, 267, 407 N.W.2d 309, 313 (Ct. App. 1987) (remand for retrospective determination of competency); *State v. Middleton,* 135 Wis. 2d 297, 323, 399 N.W.2d 917, 928 (Ct. App. 1986) (remand for retrospective findings whether defendant's trial testimony was impelled by his admissions to police).

We have weighed the fact that the state had previous opportunities to make a record on the unavailability of L.S. against the compelling need to protect child victims from the trauma of courtroom testimony when that is constitutionally permitted. The state's first opportunity was at its pretrial motion to admit L.S.'s videotape in evidence at the trial. The second was during the trial itself. The third was at the hearing on defendant's postconviction motions.

But our remand for a retrospective determination is not to reward the state. Whether severe psychological

trauma would have resulted to L.S. had she testified at defendant's trial is a question of fact. If it can be demonstrated at this late date, it should be, for L.S. is now about eleven years old, and it is possible she still has a mental age substantially less than her chronological age. If a new trial must be held, then whether she is available to testify at trial may again arise. In view of these circumstances and the need to protect child witnesses, the just result is a remand for the determinations that we have outlined.

*By the Court.*—Judgment and order reversed and cause remanded for proceedings consistent with this opinion.