STATE of Wisconsin, Plaintiff-Respondent,

v.

Louis A. TARANTINO, Jr., Defendant-Appellant.†

Court of Appeals

*No. 88-0176-CR. Submitted on briefs January 17, 1990.—Decided June 27, 1990.*

(Also reported in 458 N.W.2d 582.)

†Petition to review denied.

200

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Frank Joseph Schiro* of Milwaukee and the brief of *Douglass K. Jones* of *Law Offices of Dewane, Dewane, Kummer & Lambert* of Manitowoc.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *Christopher G. Wren,* assistant attorney general.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   Louis A. Tarantino, Jr. appeals from an order denying his motion for postconviction relief. A jury found Tarantino guilty of fourteen counts of first-degree sexual assault on three of his step-

daughters. At the jury trial, the state introduced video-taped testimony of the three child victims. The lead issue on appeal concerns the admissibility of the video-tape under Wisconsin's videotape statute, sec. 908.08, Stats., and the constitutionality of that statute.

We conclude that the trial court properly admitted the videotaped testimony of all three victims under sec. 908.08, Stats., and that the statute is constitutional on its face and as applied. Tarantino also argues insufficiency of the charging document, insufficiency of the evidence, reversal in the interests of justice and abuse of sentencing discretion. We reject these further arguments and affirm the trial court's order.

Tarantino was charged with fourteen counts of first-degree sexual assault. The victims, M.L.K., B.J.K. and K.A.K., were Tarantino's stepdaughters, and the assaults occurred when M.L.K. was eight or nine years old, B.J.K. was five or six years old, and K.A.K. was seven or eight years old.[1] At the preliminary hearing, all three girls testified to the assaults on direct and cross-examination, and their testimony was videotaped.

Pretrial, the state moved the trial court to admit the videotape into evidence at trial, pursuant to sec. 908.08, Stats. Tarantino objected. Following a hearing, the trial court ruled that the videotaped testimony of all three girls was admissible under sec. 908.08. At the time of trial, M.L.K., B.J.K. and K.A.K. were twelve-and-a-half, ten-and-a-half and nine years old, respectively. As required by sec. 908.08(1), all three girls were available to testify at the trial. As to each girl, the jury viewed the direct examination videotape and the state declined to

---

[1]The assaults against M.L.K. and B.J.K. were alleged to have occurred "sometime in 1982 or 1983," and the only assault against K.A.K. was alleged to have occurred on or around October 17, 1986.

pursue further live direct; the jury then viewed the cross-examination videotape and Tarantino pursued live cross-examination.

The jury returned guilty verdicts on all fourteen counts. The trial court sentenced Tarantino to twenty years' imprisonment for each of the first twelve counts and structured the sentences to provide for forty years' incarceration. Consecutive to these sentences, the trial court imposed ten years' probation for counts thirteen and fourteen. Tarantino filed a postconviction motion in the trial court challenging the admission of the videotape, the sufficiency of the evidence, and the sentences. The trial court denied the motion for postconviction relief. Tarantino appeals.

## I.  SUFFICIENCY OF THE INFORMATION

The first issue is whether the trial court erred when it refused to dismiss the information. The information stated that counts one through twelve occurred "sometime in 1982 or 1983" and that count thirteen occurred "sometime during the school year of 1985 to 1986." Tarantino contends that the alleged time frames are overbroad and deprived him of his constitutional right to notice, due process, compulsory process and a fair trial. *See State v. Fawcett,* 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988); *State v. R.A.R.,* 148 Wis. 2d 408, 435 N.W.2d 315 (Ct. App. 1988).

We, however, are unable to review the merits of this argument since Tarantino has failed to provide us with necessary portions of the record. While the record does include a "motion to make more definite and certain" and a "motion for a bill of particulars," we are not provided any record of the arguments for or against these

motions.[2] Most importantly, we are not provided any record of the trial court's reasoning and rulings on the matter. It is well established that, when an appeal is brought on a partial transcript, the scope of our review is necessarily limited to those portions of the record that are available to us. *State v. Aderhold,* 91 Wis. 2d 306, 314, 284 N.W.2d 108, 112 (Ct. App. 1979).[3]

## II.   ADMISSIBILITY OF THE VIDEOTAPE

The next issue is whether the trial court properly admitted the videotape into evidence pursuant to sec. 908.08, Stats., titled "Videotaped statements of children." Tarantino argues that admission was improper because sec. 908.08 is inapplicable to videotaped preliminary hearing testimony. Alternatively, he contends that even if the statute is applicable, the videotape in this case did not meet the statutory criteria for admission and was inadmissible hearsay. We reject Tarantino's arguments and affirm the trial court's rulings.

Generally, the admissibility of evidence presents a question of trial court discretion. *State v. Mares,* 149 Wis. 2d 519, 525, 439 N.W.2d 146, 148 (Ct. App. 1989). An abuse of discretion can occur if the trial court's evidentiary ruling is premised upon an error in the appro-

[2]We make no comment whether these motions are recognized in the criminal law.

[3]In addition to numerous other delays in this appeal, we note that we have already once in this case ordered the record supplemented on our own motion to include material which Tarantino should have provided in the first instance. (Order of March 1, 1990 directing the clerk of the circuit court to provide the transcripts related to the videotape issue.) In light of this history, we choose not to further delay this appeal by ordering further supplementation of the record.

priate and applicable law. *Id.* Whether the videotape falls within sec. 908.08, Stats., presents a question of statutory interpretation. *See Mares,* 149 Wis. 2d at 525, 439 N.W.2d at 148. This is a question of law to which we apply an independent standard of review. *Id.*

Tarantino first argues that the videotape should not have been admitted under sec. 908.08, Stats., because the girls' preliminary hearing testimony is not an "oral statement" within the meaning of the statute. Section 908.08 reads in relevant part:

> **Videotaped statements of children. (1)** In any criminal trial or hearing . . . the court or hearing examiner may admit into evidence the videotaped oral statement of a child who is available to testify, as provided in this section.

Tarantino reasons that the legislature could not have intended that a videotape could be made at one judicial proceeding for use at another. We reject this argument.

In construing sec. 908.08, Stats., we must ascertain legislative intent by first looking to the language of the statute itself. *State v. Pham,* 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987). Only if the language of the statute is ambiguous are we permitted to look beyond the statutory language and examine the scope, history, context, subject matter, and object of the statute to discern legislative intent. *Id.* We can refer to a recognized dictionary for the common and approved meaning of words. *State v. McCoy,* 143 Wis. 2d 274, 287, 421 N.W.2d 107, 111 (1988).

*Webster's Third New International Dictionary* 1585 (1976), defines "oral" as "conducted or delivered by the spoken word." The same source defines "statement"

as "the act or process of stating, reciting, or presenting orally or on paper." *Id.* at 2229. An oral statement thus is a presentation delivered by the spoken word. Accordingly, we conclude that the girls' preliminary hearing testimony constituted "oral statements" within the plain meaning of sec. 908.08, Stats.

Moreover, we see no basis for distinguishing an oral statement as given at a preliminary hearing from oral statements generally. If anything, an oral statement at a preliminary hearing is more reliable because it is given under oath or other circumstances which impress upon the child witness the importance of being truthful.

Tarantino next argues that the videotaped testimony of the oldest child, M.L.K., was erroneously admitted because there was no basis for finding that the "interests of justice" warranted admission. *See* sec. 908.08(3)(a)2, (4), Stats. We disagree. These subsections provide that the videotaped statement of a child "at least 12 years of age but younger than 16 years of age" shall be admitted if the "interests of justice warrant [its] admission." Sec. 908.08(4).[4]

Because M.L.K. was twelve-and-one-half years of age at the time of trial, admission of her videotaped statements turned upon whether the trial court correctly determined that the "interests of justice warrant[ed] its admission." Sec. 908.08(3)(a)2, Stats. Subsection (4) lists nine factors which the trial court may take into consideration when making this determination.[5]

---

[4]Section 908.08(3), Stats., does not impose an "interests of justice" consideration with respect to a child witness under twelve years of age.

[5]Section 908.08(4)(a)–(i), Stats., reads as follows:

(a) The child's chronological age, level of development and capacity to comprehend the significance of the events and to verbalize about them.

The trial court made findings as to all of the factors listed in sec. 908.08(4), Stats. The court determined that admissibility was not warranted under most of the factors. However, the court concluded that two factors weighed heavily in favor of admissibility. Those factors were the nature of the crime and the close emotional relationship M.L.K. had with the other two victims and Tarantino, *see* subsec. (4)(c), and the showing of the videotape would lessen the number of times M.L.K. would have to testify about the sexual assaults, *see* sub-

(b)   The child's general physical and mental health.

(c)   Whether the events about which the child's statement is made constituted criminal or antisocial conduct against the child or a person with whom the child had a close emotional relationship and, if the conduct constituted a battery or a sexual assault, its duration and the extent of physical or emotional injury thereby caused.

(d)   The child's custodial situation and the attitude of other household members to the events about which the child's statement is made and to the underlying proceeding.

(e)   The child's familial or emotional relationship to those involved in the underlying proceeding.

(f)   The child's behavior at or reaction to previous interviews concerning the events involved.

(g)   Whether the child blames himself or herself for the events involved or has ever been told by any person not to disclose them; whether the child's prior reports to associates or authorities of the events have been disbelieved or not acted upon; and the child's subjective belief regarding what consequences to himself or herself, or persons with whom the child has a close emotional relationship, will ensue from providing testimony.

(h)   Whether the child manifests or has manifested symptoms associated with posttraumatic stress disorder or other mental disorders, including, without limitation, reexperiencing the events, fear of their repetition, withdrawal, regression, guilt, anxiety, stress, nightmares, enuresis, lack of self-esteem, mood changes, compulsive behaviors, school problems, delinquent or antisocial behavior, phobias or changes in interpersonal relationships.

(i)   Whether admission of the videotape statement would reduce the mental or emotional strain of testifying or reduce the number of times the child will be required to testify.

sec. (4)(i). After balancing all the factors, the court concluded that admission of the videotape would be appropriate.

We uphold the trial court's factual findings as to each of the statutory factors since they are not clearly erroneous. Sec. 805.17(2), Stats. Furthermore, the trial court's reasoning process is reflected in the record. The trial court exercised its discretion in accord with the proper legal standards and facts of the case. *State v. Stinson,* 134 Wis. 2d 224, 232, 397 N.W.2d 136, 139 (Ct. App. 1986). Thus, no abuse of discretion occurred and we affirm the admissibility of M.L.K.'s videotaped statements under sec. 908.08, Stats.

Tarantino next challenges the admission of the videotape on hearsay grounds, arguing that the witnesses were available and, thus, the videotape was inadmissible. Tarantino relies on *State v. Sorenson,* 152 Wis. 2d 471, 488, 449 N.W.2d 280, 287 (Ct. App. 1989), which held that the state's use of the videotaped statement of an available child victim violated the hearsay rules of evidence and the defendant's right of confrontation under the state and federal constitutions. Tarantino misapplies *Sorenson.*

As in *Sorenson,* the question here involves the admission of videotaped preliminary hearing testimony of an available declarant under an exception to the hearsay rule. However, that is where the similarity ends. In *Sorenson,* the hearsay exception under consideration was sec. 908.045(1), Stats., which requires that the declarant be *un*available, while in this case the rule under consideration is sec. 908.08, Stats., which requires that the declarant be available. Tarantino concedes that all three children were available in this case. Accord-

211

ingly, we conclude that the videotape was properly admitted under sec. 908.08.

## III. CONSTITUTIONALITY OF SEC. 908.08, STATS.[6]

### A. Facially

The next issue is whether sec. 908.08(5), Stats., is facially unconstitutional. The statute provides as follows:

> If the court or hearing examiner admits a videotape statement under this section, the party who has offered the statement into evidence may nonetheless call the child to testify immediately after the videotape statement is shown to the trier of fact. If that party does not call the child, *the court, or hearing examiner, upon request by any other party, shall order that the child be produced immediately following the showing of the videotape statement to the trier of fact for cross-examination.*

*Id.* (emphasis added).

There is a strong presumption favoring the constitutionality of statutes. *In re S.S.K.,* 143 Wis. 2d 603, 621, 422 N.W.2d 450, 457 (Ct. App. 1988). The party

---

[6]The state suggests that we need not reach Tarantino's constitutional arguments because the videotape was nevertheless admissible pursuant to sec. 967.04, Stats., entitled "Depositions in criminal proceedings." We may affirm a trial court ruling on grounds other than those used by the trial court, *see State v. Holt,* 128 Wis. 2d 110, 124–25, 382 N.W.2d 679, 686–87 (Ct. App. 1985). We decline to do so in this case because the state in the trial court expressly disavowed sec. 967.04 as a basis for admitting the evidence.

challenging the statute's constitutionality bears a heavy burden of persuasion. *Id.* That burden is to show unconstitutionality beyond a reasonable doubt. *State ex rel. Smith v. City of Oak Creek,* 139 Wis. 2d 788, 802, 407 N.W.2d 901, 907 (1987).

Tarantino argues that sec. 908.08(5), Stats., violates his state and federal due process rights because it burdens him with calling the child victims as witnesses if he wants to preserve his right to live confrontation. This, he asserts, places him in a Catch-22: he must either forego his right to confrontation, or offend the sensibilities of the jury by calling the videotaped complainant. This dilemma, Tarantino asserts, deprives him of a fair trial.

In support, Tarantino cites *Long v. State,* 742 S.W.2d 302 (Tex. Crim. App. 1987), *cert. denied,* 485 U.S. 993 (1988), which held unconstitutional a Texas statute permitting the trial use of videotaped oral statements of a child. We do not find *Long* persuasive because the Texas statute was different in several respects from sec. 908.08(5), Stats. For instance, the Texas statute precluded the attorneys from attending the videotape session. *Long,* 742 S.W.2d at 314. And, more importantly to the issue here, the statute did not specify when and by whom the child could be called for live testimony, forcing the accused to take the initiative in calling the child as a defense witness, thereby creating a Catch-22 situation. *Id.* at 329 (Campbell, J., concurring and dissenting).

Moreover, a traditional substantive due process analysis does not support Tarantino's challenge to the statute. The substantive guarantee of due process requires that the legislation have a rational relationship to a legitimate end of government. *In re K.N.K.,* 139 Wis. 2d 190, 211, 407 N.W.2d 281, 290–91 (Ct. App.

213

1987). Substantive due process invokes considerations of decency and fairness. *See Oddsen v. Board of Fire & Police Comm'rs,* 108 Wis. 2d 143, 159, 321 N.W.2d 161, 170 (1982). This concept relates to those personal immunities which are found to be implicit in the concept of ordered liberty. *Palko v. Connecticut,* 302 U.S. 319, 324-25 (1937).

When certain fundamental rights are affected by governmental action, a strict judicial scrutiny is required. *K.N.K.,* 139 Wis. 2d at 211, 407 N.W.2d at 291. Tarantino argues that sec. 908.08(5), Stats., impacts upon his right to a fair trial. As such, he urges strict scrutiny. We will accept Tarantino's "strict scrutiny" approach *arguendo* since we conclude, nonetheless, that the statute passes constitutional muster.

The purpose of sec. 908.08, Stats., is self-evident from its language. The statute seeks to reduce or eliminate the trauma which testifying can bring to a child witness. This is borne out by the legislative purpose recited in the enacting legislation:

> **Legislative purpose.** This act is intended to allow children to testify in criminal, juvenile and probation and parole revocation proceedings in a way which minimizes the mental and emotional strain of their participation in those proceedings; to preserve the right of all parties to cross-examine those child witnesses; and to allow the trier of fact to observe the demeanor of those child witnesses while testifying.

Sec. 1, 1985 Wis. Act 262.

The criminal justice system is seeing an alarming increase of alleged physical and sexual assaults against children. Testifying in court can be an intimidating and unsettling experience for any witness, adult or child. The

214

legislature has addressed this concern for child witnesses in sec. 908.08(5), Stats. The policy served by this statute rationally relates to a legitimate end of government. *See K.N.K.,* 139 Wis. 2d at 211, 407 N.W.2d at 290–91.

We must balance the effect of this legislation against an accused's ability to receive a fair trial. Tarantino complains that the statute improperly curtails confrontation. We disagree. The statute provides that the trial court, upon request of the party against whom the videotaped testimony is received, *shall* order the child produced for cross-examination. Thus, while the statute allows for videotaped testimony, it specifically builds a confrontation opportunity into its procedures. This, we conclude, satisfies substantive due process.

Tarantino further argues that, for confrontation purposes, a declarant must be unavailable before his or her hearsay statements will be admitted. We construe this argument as an implicit challenge to the constitutionality of sec. 908.08, Stats., which provides for an exception to the hearsay rule when the declarant *is* available. First, we note that there are several other exceptions to the hearsay rule which do not require the unavailability of the declarant. *See* sec. 908.03, Stats. Second, sec. 908.08(5), which permits full cross-examination of the declarant at trial, satisfies constitutional confrontation requirements. *California v. Green,* 399 U.S. 149, 160–64 (1970) (holding that where a declarant is present to testify and to submit to cross-examination, admission of his out-of-court statements under a hearsay exception does not create a confrontation problem); *see also State v. Burns,* 112 Wis. 2d 131, 144, 332 N.W.2d 757, 764 (1983) (holding that confrontation rights under the Wisconsin and United States Constitutions are the same).

Tarantino also complains that the statute depicts him as the "villain" to the jury because the child may be called for live testimony at his instance. Here again we disagree with Tarantino. While the child may be called at the defendant's (or the state's) instance, the request is made *to the court.* The court then orders that the child be produced for testimony. The jury need not be privy to the mechanics of how, or at whose request, the child is produced for live testimony.

In summary, we conclude that sec. 908.08(5), Stats., is not an unconstitutional curtailment of Tarantino's substantive due process rights. To the contrary, we conclude that the statute represents a proper balancing of the need to control the traumatizing of children as a result of the testimonial experience and a defendant's right to a fair trial—both legitimate ends of government. The statute does not violate fundamental considerations of decency and fairness, *see Oddsen,* 108 Wis. 2d at 159, 321 N.W.2d at 170, nor does the statute trample upon those personal immunities found to be implicit in the concept of ordered liberty. *See Palko,* 302 U.S. at 324-25.

## B.  As Applied

Tarantino contends that sec. 908.08, Stats., is unconstitutional as applied in this case. He raises several arguments in support of his contention, none of which we find persuasive. First, Tarantino argues that his right to an effective preliminary hearing was jeopardized because the preliminary hearing was videotaped. He asserts that his attorney *may* have refrained from asking questions of great importance for fear that later damage may be incurred by the jury hearing the questions and

answers at trial. Tarantino, however, does not explain the nature of the unasked questions. His argument is purely speculative and we do not address it.

Second, Tarantino contends that sec. 908.08, Stats., permitted the admission of a videotape which contained inadmissible evidence in the form of answers to leading and suggestive questions and the use of anatomically correct dolls. This argument does not pose a challenge to the constitutionality of sec. 908.08. Section 908.08(2)(b) provides for the pretrial levying of objections to inadmissible evidence within the videotape, at which point the trial court must rule on the objections and order that inadmissible evidence be edited out of the videotape. In this case, Tarantino took advantage of this provision. However, his objections were overruled and that ruling is not challenged on appeal.

Third, Tarantino argues that the admission of the videotape under sec. 908.08, Stats., effectively, and improperly, lowered the state's burden of proof. He contends that when the jury viewed the videotape of a hearing at which the burden of proof is merely probable cause and the witnesses' credibility cannot be challenged, the jury was invited to find guilt beyond a reasonable doubt based upon a mere showing of probable cause. We disagree. Simply because preliminary hearing evidence was admitted at the trial does not mean that "probable cause" became the burden of proof. To the contrary, the jury was instructed on the "beyond a reasonable doubt" burden of proof. This standard was not compromised in the trial of this case.

## IV. SUFFICIENCY OF THE EVIDENCE

The next issue is whether the evidence is sufficient to support the convictions for first-degree sexual assault of M.L.K. and B.J.K. Tarantino argues that M.L.K.'s and B.J.K.'s testimony was inherently incredible and that the remaining evidence is insufficient to support these convictions. We disagree.

Upon a challenge to the sufficiency of the evidence, the test we apply is whether the evidence is so insufficient in probative value and force that, as a matter of law, no reasonable jury could have found guilt beyond a reasonable doubt. *State v. Pankow,* 144 Wis. 2d 23, 30, 422 N.W.2d 913, 914 (Ct. App. 1988). We examine the evidence before the jury and reasonable inferences drawn therefrom in the light most favorable to the verdict. *Id.* This court will only substitute its judgment for that of the trier of fact when the fact finder relied upon evidence that was inherently or patently incredible—that kind of evidence which conflicts with the laws of nature or with fully-established or conceded facts. *State v. Daniels,* 117 Wis. 2d 9, 17, 343 N.W.2d 411, 415–16 (Ct. App. 1983).

Tarantino contends that M.L.K.'s and B.J.K.'s testimony conflicts with nature. According to both girls' testimony, Tarantino had vaginal and anal intercourse with each of them on multiple occasions. Although both testified that the assaults caused pain, M.L.K. did not remember whether she bled and B.J.K. testified that she did not bleed. Dr. Kathryn Iorio, who conducted examinations of both girls' outer genitalia, rectums and abdomens three years after the assaults, testified that there were no signs of scarring or other abnormalities and that both girls' hymens were open. She testified that her examinations were limited because of the girls' appre-

218

hension. Because of the open hymens, Dr. Iorio testified that she could not rule out sexual abuse.

Conversely, Tarantino's expert, Dr. James Nocon, ruled out sexual abuse. Although Dr. Nocon did not examine M.L.K. or B.J.K., he had read Dr. Iorio's report and opined that Dr. Iorio's findings were consistent with a lack of sexual abuse. He based his opinion on the fact that Dr. Iorio's report did not note the existence of tears or scarring of the hymen or vaginal opening, vaginal discharge, or an enlarged vaginal opening.

Tarantino argues that the girls' testimony is in conflict with nature because the sexual intercourse described by the girls could not have occurred without resultant bleeding and scarring. We cannot agree.

In order to conflict with nature, testimony must present "physical improbabilities, if not impossibilities," or be "intrinsically improbable and almost incredible." *See State v. Clark,* 87 Wis. 2d 804, 816, 275 N.W.2d 715, 721 (1979). Tarantino's argument assumes that every child who is subjected to penile penetration by any adult male will, without exception, bleed at the time of the assault and show signs of scarring three years later and that the lack of bleeding or scarring is a physical impossibility. However, whether bleeding occurs might depend on numerous variables, including the relative anatomies of the victim and aggressor and the degree of penetration. The existence of scars three years after the assaults may depend on many of these same variables. We are not satisfied that Tarantino has offered evidence which reduces the girls' testimony to the level of intrinsic improbability or incredibility as required by *Clark.*

## V. NEW TRIAL IN THE INTERESTS OF JUSTICE

Tarantino next requests a new trial in the interests of justice. This court may exercise its discretionary reversal power under sec. 752.35, Stats., if it appears from the record that the real controversy has not been tried or that it is probable that justice has miscarried. *Pankow*, 144 Wis. 2d at 47, 422 N.W.2d at 922. Tarantino contends that justice miscarried because: (1) the medical testimony at trial raised grave doubts as to his culpability; (2) the children's mother admitted at trial that she had lied in the past in matters relating to her children; (3) Dr. Nocon testified that many times children make false accusations of abuse; (4) Waukesha county statistics show that 69% of reported child sexual assaults in the county in 1985 were unfounded; and (5) Tarantino passed a truth serum test after he was convicted.

Tarantino's arguments essentially contend that the jury should have believed his witnesses instead of the prosecution's witnesses. This is not a proper basis for granting a new trial.

## VI. ABUSE OF SENTENCING DISCRETION

Last, Tarantino contends that his sentence is unduly harsh and unreasonable. Upon conviction of fourteen counts of first-degree sexual assault, Tarantino faced a possible sentence of 280 consecutive years in prison. The trial court imposed a sentence resulting in forty years in prison plus ten years' probation.

Sentencing is within the sound discretion of the trial court and we will not reverse absent an abuse of that discretion. *State v. Roubik,* 137 Wis. 2d 301, 310, 404 N.W.2d 105, 108 (Ct. App. 1987). The sentencing court is presumed to have acted reasonably and the defendant has the burden of showing an unreasonable or unjustifiable basis in the record for the sentence. *Id.* Tarantino has failed to meet that burden. In fact, he concedes that the sentencing court "attempted to be extremely comprehensive in approaching the sentencing . . . considering all of the circumstances and issues argued herein, as well as the significant factors to be weighed by the court in levying a sentence tailored to the individual defendant."

Tarantino's only argument for resentencing is that the trial court imposed a sentence which exceeded the guidelines established by the Wisconsin Sentencing Commission and the American Bar Association. However, there is no right to appeal on the basis that the sentence imposed does not fall within the Wisconsin Sentencing Commission guidelines. Sec. 973.012, Stats.; *State v. Halbert,* 147 Wis. 2d 123, 130, 432 N.W.2d 633, 636 (Ct. App. 1988). Likewise, we conclude that there is no right to appeal on the basis that the sentence exceeds the American Bar Association guidelines, since Wisconsin circuit court judges are not even required to take those guidelines into consideration when imposing sentence.

*By the Court.*—Order affirmed.